*454 OPINION.
Smith :
In this proceeding only the deficiencies for 1927 and 1928 are before us, but the true tax liability for 1927 depends upon the amount of a statutory net loss sustained in 1926, which the petitioner is entitled to carry forward in the computation of its taxable income for 1927. Accordingly, it is necessary to pass upon certain deductions from petitioner’s income in 1926, which have been disallowed by the respondent. As authorized by section 274 (g) of the Revenue Act of 1926,[1] we therefore determine the ratable annual deductions representing amortization of the discount on the bond issues to which the petitioner was entitled in that year, as a condition precedent to redetermination of the deficiency for 1927.
*455 The petitioner contends that the value of its common stock delivered to the First Wisconsin Co. and to its shareholders in connection with its refinancing operations should be regarded as the cost of selling its first and second mortgage bond issues, and seeks to deduct such alleged costs ratably over the terms of the respective issues. The repondent has based his determination on his finding that in each instance the bonds were sold at par for cash. In his brief he argues that even if it is not true, each transaction was a mixed sale of bonds and stock and there is no evidence of record upon which any allocation of receipts from the sale of the two different types of securities can be made.
The law is well established that a corporation which keeps its books of account and makes its income tax returns on the accrual basis is entitled to deduct from the gross income of each year a pro rata part of the expenses incurred and discount allowed upon the sale of bonds. Chicago, Rock Island & Pacific Railway Co., 13 B. T. A. 988; Liberty Farms Co., 22 B. T. A. 1298; East Ninth Euclid Co., 26 B. T. A. 32; Pictorial Review Co., 26 B. T. A. 472; Western Maryland Railway Co. v. United States, 33 Fed. (2d) 695.
The real question before us is the amount of the discount at which the petitioner’s first mortgage bonds were sold in 1925. The respondent, on the one hand, contends that they were not sold at a discount, but were sold at par, and that the shares of stock of the petitioner were issued without any cash consideration. The petitioner, on the other hand, contends that the fair market value of the shares of its capital stock on September 1, 1925, was $100 per share and that therefore the discount at which the $1,000,000 5-year 7 percent first mortgage bonds were sold was $250,000 and the discount at which the $698,850 second mortgage bonds were sold was $139,770. Substantially all of the evidence submitted by the petitioner is directed to the fair market value of its shares on September 1,1925. No evidence was submitted with respect to the amount of cash realized by the petitioner from the sale of its bonds alone.
The contention of the respondent that the bonds were sold at par cannot be sustained. The evidence conclusively shows that the petitioner was unsuccessful in its efforts to sell its bonds at par. The First Wisconsin Co. was willing to underwrite the issue only upon condition that the petitioner rid itself of its floating indebtedness and issue to it certain shares of stock which it could sell to its customers in connection with the sale of the bonds.
In this connection the president of the First Wisconsin Co. testified:
The common stock that we received of the corporation [petitioner] we sold in units to the bondholders, and six or eight months later we were able to sell *456 some oí the bonds, the tail end of the issue, without the stock. It was not a part of our plan, but it happened that eight months later we were able to sell the bonds without the common stock.
The position of the petitioner is that its shares of common stock were sold at par. The corollary of this is that the first mortgage bonds were sold at $75. There is nothing in the evidence that warrants such a contention. The first mortgage bonds in the amount of $1,000,000 were secured by property that had cost the petitioner $3,000,000, bore 7 percent interest, and matured in 1930. We reject the contention that $750,000 of the cash received should be allocated to the $1,000,000 bonds and $250,000 to the $250,000 par value of stock issued.
From a consideration of all of the evidence, we reach the conclusion that the first mortgage bonds were sold for $900,000, or at a total discount of $100,000, and that the common stock issued in connection therewith was sold at $40 per share. Upon this basis the petitioner is entitled to the amortization of the discount of $100,000 over the life of the first mortgage bonds.
Upon the same basis, namely, that the shares of stock issued in connection with the second mortgage bonds were sold at $40 per share, the total discount at which the $698,850 par value of second mortgage bonds were sold was $55,908. The petitioner is entitled to amortize such discount over the life of the second mortgage bonds.
At the hearing counsel for respondent admitted error in the computation of petitioner’s deductible allowances for depreciation in 1926, in the amount of $38,859.54, which he now concedes should be added to petitioner’s allowable deductions for that year, and that the effect of such inclusion is to increase any statutory net loss sustained in 1926 in the amount of $16,597.65. He also admits that “ in the event an additional deduction was allowed for 1926 of the bond discount, of course, the net loss would be increased by whatever amount the petitioner is entitled to.” The effect of these admissions will be taken into account in the recomputation under Rule 50.
Reviewed by the Board.

Judgment will be entered wnder Rule 50.

 Sec. 274. (g). The Board in redetermining a deficiency in respect of any taxable year shall consider such facts with relation to the taxes for other taxable years as may be necessary correctly to redetermine the amount of such deficiency, but in so doing shall have no jurisdiction to determine whether or not the tax for any other taxable year has been overpaid or underpaid.